UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/16/2014
```

-------------------------------------------------------- X
TONY TARTT,    :
                       Plaintiff,    :
                                    :
        -against-                   :          12-CV-5405(VEC)
                                    :
CITY OF NEW YORK, WARDEN HILLS,     :          MEMORANDUM
C.O. MOSS, DEPUTY WARDEN STANLEY    :          OPINION AND ORDER
LETT, C.O. CHERELLE PAYNE, CAPTAIN  :
JOHN DOE, JOHN DOE CAUCASIAN        :
OFFICER, and JOHN DOE,              :
                       Defendants.   :
-------------------------------------------------------- X

VALERIE CAPRONI, United States District Judge:

        Plaintiff Tony Tartt, *pro se*, alleges that prison officials at the Robert N. Davoren

Complex ("RNDC") on Rikers Island forced him to ride from building to building on an

overheated bus, denied him access to medication for his diabetes and asthma, improperly cuffed

his hands behind his back, and maced and choked him, all over the course of approximately 20

hours.  He also alleges that RNDC officials improperly confiscated his mail and photographs,

mocked him, and harassed him with frequent strip and body-scan searches.  Defendants move for

summary judgment on the grounds that Tartt did not exhaust the available administrative

remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Because Tartt did not exhaust his claims, but some were either not grievable or, if they were

grievable, the Defendants waived the exhaustion defense,  Defendants' motion is GRANTED  IN

PART and DENIED  IN  PART.[1]

---

[1]        This opinion supersedes the opinion filed in this case on July 11, 2014, which mistakenly characterized the
New York Codes Rules and Regulations as applicable to New York City facilities. *See* 7 NYCRR §§ 1.0, 1.5.

# BACKGROUND

Tartt's First Amended Complaint ("FAC") alleges that Department of Corrections ("DOC") officials mistreated Tartt from approximately 2:00 p.m. on July 29, 2012,[2] through 11:00 the following morning.  Specifically, various DOC officials allegedly subjected Tartt to extreme temperatures in a bus, handcuffed him behind his back despite medical instructions to handcuff him in front, and denied him access to medication for diabetes and asthma.  When Tartt passed out, he alleges, unidentified officers threatened him and, on his failure to rise, maced, beat, and choked him.  Tartt also alleges that Defendant Moss confiscated Tartt's mail and photographs without due process and strip-searched him four days per week while Warden Hills mocked him with lewd comments.  FAC at 3-4.

Tartt filed grievances regarding his strip searches in May 2012 and filed complaints regarding the events of June 29-30 on July 2 and July 5, 2012.  Plaintiff's Local Rule 56.1 Statement ("Plaintiff's 56.1") ¶ 10; Dantowitz Decl. Ex. D at 20.  He did not receive a response to his complaints and did not pursue them further.  Plaintiff's 56.1 ¶ 11; Tartt Decl. Ex. D § IV(B)(1)(d)(i).  Tartt commenced this action by signing his formal complaint and providing it to DOC officials on July 5, 2012.  Plaintiff's 56.1 ¶ 14.

The Court's Order of August 13, 2012 dismissed Tartt's claims against the DOC and the RNDC and required the City to help Tartt to identify several defendants who were sued as John Doe.  Dkt. 6 (citing *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*)).  Based on the City's efforts, Tartt was able to name two of the unknown John Doe Defendants.  Dkt. 43 at 3-4.

---

[2]       Although the FAC identifies the date of the incident as "[F]riday June 28th, 2012," it became clear at Tartt's deposition that he intended to allege Friday, June 29 as the date on which the events began.  Dantowitz Ex. D at 35.

Tartt filed an amended complaint on May 2, 2013; in February 2014, the Defendants moved for summary judgment.

## DISCUSSION

### I.      Standard of Review

"Summary judgment is appropriate where there exists no genuine issue of material fact and, based on the undisputed facts, the moving party is entitled to judgment as a matter of law." *Guippone v. BH S & B Holdings LLC*, 737 F.3d 221, 225 (2d Cir. 2013) (citation omitted); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).  In reviewing a motion for summary judgment, courts "must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." *Catanzaro v. Weiden*, 188 F.3d 56, 61 (2d Cir. 1999).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (quotation marks omitted).

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they *suggest*.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*) (quoting *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis from *Triestman*).  Courts should go to lengths to ensure that inexperienced *pro se* litigants do not inadvertently forfeit rights or winning arguments; this "special solicitude" includes a liberal construction of papers and a flexibility on some otherwise-rigid procedural rules. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010).  Courts "should be

particularly solicitous of *pro se* litigants who assert civil rights claims" and incarcerated litigants. *Id.* at 102. Tartt falls into both categories.

## II.    PLRA Administrative Exhaustion Requirement

Congress passed Section 803 of the PLRA "to 'invigorate the exhaustion prescription' for prisoners." *Ruggiero v. Cnty. of Orange*, 467 F.3d 170, 173 (2d Cir. 2006) (quoting *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Section 803 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The administrative process that a prisoner must exhaust is "defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "The exhaustion inquiry thus requires that [courts] look at the state prison procedures and the prisoner's grievance to determine whether the prisoner has complied with those procedures." *Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009). The Supreme Court in *Jones* rejected a "total exhaustion" rule that would bar any lawsuit containing one unexhausted claim, instead requiring district courts to dismiss non-exhausted claims and permit the others to proceed. 549 U.S. at 222-23.

"[W]hile the PLRA's exhaustion requirement is mandatory, certain caveats apply." *Ruggiero*, 467 F.3d at 175 (quotation marks, citations, and alterations omitted). The three exceptions are: (1) courts should not require exhaustion when no administrative remedies were available to the prisoner; (2) defendants may waive or forfeit the defense of nonexhaustion; and (3) "special circumstances" may justify a prisoner's failure to comply with administrative procedural requirements. *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004). A prisoner's

"reasonable misunderstanding of the grievance procedures" is one "special circumstance" that can forgive the failure to exhaust administrative remedies.  *Ruggiero*, 467 F.3d at 175.

### III.     The Administrative Grievance Process for Prisoners

The DOC's Inmate Grievance Resolution Program ("IGRP") lays out a standard process for adjudicating inmate complaints.  First, the inmate must file a grievance with the Inmate Grievance Resolution Committee ("IGRC"), which has up to five days to resolve the grievance informally before attempting to resolve it formally.  Dantowitz Decl. Ex. B § IV(B)(1).  *Id.* § IV(B)(1).  Second, the inmate may appeal to the commanding officer for review.  *Id.* § IV(B)(2).  After that, the inmate may appeal to the Central Office Review Committee ("CORC").  *Id.* § IV(B)(3).  The Board of Corrections may review the CORC's decision.  Dantowitz Decl. Ex. B § IV(B)(3)(c).  After all of these avenues for redress are exhausted, an inmate may initiate a federal action.

The Inmate Handbook[3] and the March 13, 2008 IGRP Directive provide that claims involving assault and harassment are "not grievable."  The IGRP Directive describes what DOC officials should do when an inmate's complaint falling into those categories is filed as though the

---

[3]        Officials at Rikers gave Tartt a DOC "Inmate Handbook" not long after his arrival on Rikers Island. Dantowitz Decl. Ex. D at 18.  The Handbook provides: "Some issues are not grievable.  These include complaints of assault or harassment by a staff person, which the IGRC will refer to the commanding officer for necessary action. . . ."  Dantowitz Decl. Ex. C at 21.

complaint were grievable,[4] but neither the Directive nor the Inmate Handbook describes any grievance process for complaints involving assault or harassment.[5]

## IV.    Tartt's Unexhausted Claims

The Court interprets Tartt's brief as arguing that he did exhaust all administrative remedies but that, if the Court determines he did not, then he was not required to do so.  Neither argument is persuasive as to his claims relating to overheating, lewd insults, indifference to medical condition, and improper confiscation of mail and photographs.

Tartt did not pursue any administrative remedies beyond filing an initial complaint, which may or may not have raised all of those claims.  Tartt states that he received no response to his grievances and concedes that he did not pursue the standard process that IGRP provides for pursuing a grievance.  Plaintiff's 56.1 ¶¶ 11, 15.  Despite his argument to the contrary, *id.* ¶ 17, merely filing a complaint without awaiting a response does not exhaust the inmate grievance process.  Dantowitz Decl. Ex. B § IV(1)(d).

Tartt appears to argue in the alternative that his complaints related to overheating, lewd insults, indifference to medical condition, and improper confiscation of mail and photographs

---

[4]     The Directive provides:

> Inmate allegations of assault or harassment by either staff or inmates are not grievable under the grievance mechanism.  However, reports of such allegations made to the IGRP shall be recorded on [a standard form] and shall be entered in a confidential IGRC logbook.  The form, together with any relevant documentation submitted by the complainant shall be hand delivered by IGRC staff, on the day of receipt, to the office of the Commanding Officer, or designee, where the form shall be time-stamped and an appropriate entry made in a confidential IGRP ASSAULT/HARASSMENT logbook.

Dantowitz Decl. Ex. B § II(C)(2).  The Directive later provides that inmates complaining of "assault, harassment or criminal misconduct . . . shall be advised that complaints involving removal of a staff person may be addressed by direct submission to the Commanding Officer (or designee), Inspector General, or Investigation Division."  *Id.* § II(C)(3).  The Directive is silent whether a direct submission is required or permitted if the inmate is not seeking "removal of the staff person."

[5]     Harassment is not defined in the IGRP Directive or Handbook.  Merriam-Webster Dictionary defines "harass" as: "to annoy or bother (someone) in a constant or repeated way."

were non-grievable complaints.  Even giving Plaintiff's claims the very liberal construction that

this Court must given his *pro se* status, those claims simply do not constitute claims of assault or

harassment.   To shoehorn these claims into the IGRP's non-grievable category would eviscerate

the exhaustion requirement altogether.

Tartt also appears to argue that he reasonably, although mistakenly, believed that these

claims were not subject to the IGRP's grievance procedures.  *See Giano v. Goord*, 380 F.3d 670,

678 (2d Cir. 2004).  Tartt acknowledges both receipt of the Prison Handbook and familiarity

with the IGRP.  Plaintiff's 56.1 ¶¶ 2, 4.  "Receipt of such a handbook generally indicates that the

inmates were informed of the grievance procedure so as to make that procedure 'available' to

them."  *Smith v. City of New York*, No. 12-cv-3303(CM), 2013 WL 5434144, at *10 (S.D.N.Y.

Sept. 26, 2013).  Tartt's awareness of the process is further evidenced by the fact that he filed a

number of grievances.  When "'the record reflects that plaintiff continued to file grievance after

grievance during the period' of alleged unavailability, 'it is apparent that a reasonable person of

ordinary firmness in plaintiff[']s position, as well as plaintiff himself, would not have thought

that administrative remedies were unavailable.'"  *Kasiem v. Switz*, 756 F. Supp. 2d 570, 577

(S.D.N.Y. 2010) (quoting *Harrison v. Goord*, No. 07-cv-1806(HB), 2009 WL 1605770, at *6

(S.D.N.Y. June 9, 2009)) (alterations omitted).  Moreover, inmates are advised that if they are

"unsure whether an issue is grievable, [they] should file a grievance."  Dantowitz Decl. Ex. C at

21.

Finally, Tartt argues that it would have been futile for him to pursue his grievances

through administrative channels.  *See* Plaintiff's 56.1 ¶ 15.  Because he directed some of his

grievances at the Warden and Deputy Warden, Tartt asserted that the officers responsible for the

standard grievance processes would not follow the standard protocol.  Dantowitz Decl. Ex. D at

29-30.  But courts regularly apply the exhaustion requirement in the context of lawsuits against senior prison officials, including wardens and commissioners.  *See, e.g.*, *Johnson*, 2013 WL 5718474, at *4; *Ramrattan v. Schriro*, No. 11-cv-3749(JMF), 2013 WL 3009908, at *1 (S.D.N.Y. June 17, 2013).  Their inclusion does not *per se* render a grievance futile.

Tartt separately argues that no one responded to his May and June grievances, which caused him to lose faith in the grievance process.  *Id.*  Not believing that the process will yield a fair result in a particular case is not, of course, grounds for an inmate to forgo required administrative procedures.  Exhaustion requirements apply even when "a party [] conclude[s]— correctly or incorrectly—that exhaustion is not efficient in that party's particular case." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  The appropriate recourse when a prisoner believes that he will lose his grievance is to file the grievance, lose, exhaust the administrative avenues of appeal, and then sue.  *See id.* at 89-90; *but see id.* at 103 (Justice Breyer, concurring) (citing *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 13 (2000) for the principle that futility could sometimes excuse failure to exhaust).  Even if futility is a defense to an inmate's failure to exhaust administrative claims, Tartt has not established that it would have been futile for him to pursue standard administrative remedies in this case.

Tartt's claims other than for excessive force and harassment are therefore barred by his failure to exhaust available administrative procedures and will be dismissed.[6]  Because courts analyze exhaustion independently for each claim in a complaint, however, this does not end the inquiry.  *Jones*, 549 U.S. at 222-23.

---

[6]     The dismissed claims are the only claims brought against Defendants Hill, Lett and Payne.

V.      **Claim for Excessive Force and Harassment**

Tartt also raises a claim of excessive force (specifically that he was maced and choked when he failed to comply with directives to stand) and a claim that, given his *pro se* status, the Court interprets as alleging harassment (strip and body-scan searches with undue frequency designed to annoy or intimidate an inmate).

Tartt and Defendants agree that "Plaintiff's excessive force claim is not subject to the DOC grievance process." Def. Reply at 6. Defendants do not argue here that there is *any* administrative process through which Tartt should have submitted his complaint of excessive force. To the extent there is an administrative grievance process for such claims at Rikers, Defendants have waived any defense of non-exhaustion that they might otherwise have advanced. *Johnson v. Testman*, 380 F.3d 691, 695 (2d Cir. 2004).[7]

Tartt also alleges that "C.O. Moss was constantly harassing [him]," FAC at 4, and specifically characterizes his repeated trips to the body scanner as "repeated incidents of harassment." *Id.* at 3. Both references to Moss in the FAC are in close proximity to Tartt's claims about being incessantly strip searched. *Id.* at 3-4. The Court "liberally construes" Tartt's *pro se* complaint to allege that Moss subjected him to the strip searches without legitimate penological purposes.[8]

---

[7]      Any such defense would also have to establish that, despite the guidance available in the IGRP directive and the Inmate Handbook, understanding harassment claims to be not grievable would not constitute "a reasonable misunderstanding of the grievance procedures[ so as to] justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero*, 467 F.3d at 175.

[8]      Defendants argue that Tartt's strip search claim "is alleged only against defendants whose identities cannot be ascertained." Reply at 7. This is in tension with their assertion that "Plaintiff characterizes **his strip search claim against Defendant Moss** as 'harassment' (which is not grievable)." Reply at 4 (emphasis added). While Defendants could be right that Tartt intends to accuse one or more John Doe Defendants of the harassing strip searches, construing Tartt's *pro se* submissions liberally, the Court does not so read the FAC. When Tartt intends to allege that unknown officers mistreated him, he makes allegations against John Doe. *See* FAC at 3-4. In contrast, the allegations regarding harassment, while not a model of clarity, appear to name C.O. Moss as the bad actor:

Defendants' also concede that harassment claims are not grievable.  Reply at 4.

Accordingly, as with the excessive force claims, the Court concludes that if there is an

administrative process that could have been used, and therefore a corresponding exhaustion

requirement, Defendants have waived it.

Although stating that harassment claims are not grievable, Defendants assert that Tartt's

claims based on the strip searches are subject to the IGRP's exhaustion requirements.  Reply at

3-4.  The implicit argument – not spelled out in Defendants' papers – is that strip searches cannot

constitute harassment.  Complaints about strip searches do not invariably (or even usually)

constitute claims of harassment.  *See, e.g., Simmons v. Cripps*, No. 12-cv-1061(PAC)(DF), 2013

WL 1290268, at *3-4 (S.D.N.Y. Feb. 15, 2013) (report and recommendation) (Muslim man

objected to strip frisk searches as violative of his religious freedom); *Davis v. N.Y. City Dep't of

Corr.*, No. 10-cv-288(ALC), 2012 WL 4468183, at *1 (S.D.N.Y. Sept. 25, 2012) (same); *Myers

v. City of N.Y.*, No. 11-cv-8525(PAE), 2012 WL 3776707, at *4, 9 (S.D.N.Y. Aug. 29, 2012)

(inmate alleged that five strip searches, conducted when he arrived at the facility and when he

left to go to court, were unconstitutional invasions of privacy as applied to a non-felony

detainee); *Franco v. Monroe*, No. 09-cv-8787(LTS), 2012 WL 3552673, at *1 (S.D.N.Y. Aug.

13, 2012) (inmate alleged that officers, mistaking hemorrhoids for contraband, forced him to

stand naked for a long period of time while they verified his innocence).  Moreover, some courts

---

[A]ll of my mail & photos were confiscated with[out] due process and I was forced to be strip
searched and put through the body x-ray scanner 4 out of 7 days per week and it caused me extreme
emotional stress during the repeated incidents of harassment.  **C.O. Moss has put me through a
lot of stress during the repeated strip searches** and when I was complaining about them not giving
me my underwear, the warden . . . [disparaged the size of my genitals].
 . . . **Defendant #4 C.O. Moss was constantly harassing me and while being strip[] searched**
Defendant #2 who is [W]arden [H]ill [disparaged my genitals]. . . .

FAC at 4 (emphasis added).

have dismissed strip-search-based harassment claims brought by New York prisoners for failure to exhaust, but those cases do not appear to have involved agreement by the parties that harassment claims are not grievable. *Johnson*, 2013 WL 5718474, at \*4; *see* Sec. Amend. Compl. (Dkt. 9), *id.*, (No. 12-cv-7239(WHP)) (asserting that plaintiff was "Sexuily [sic] Harassed by being Strip Searched 27-day [sic] out of a Month").

Defendants point to no authority holding that, as a matter of law, an allegation that a corrections official has deliberately targeted an inmate for strip searches "five days out of seven or sometimes seven days out of seven," Dantowitz Decl. Ex. D at 20, based on unsubstantiated suspicions, does not constitute an allegation of harassment. Tartt's *pro se* complaint, read liberally and with "special solicitude," *Triestman*, 470 F.3d at 475, suggests that Moss targeted him for invasive strip searches for the purpose of harassing him. Not every prisoner's claim that he was improperly strip searched will constitute a claim of harassment for the purposes of the IGRP, but Tartt's does. In light of the apparent absence of an administrative process that handles claims of harassment, this Court cannot dismiss Plaintiff's harassment claim for failure to exhaust. Whether Plaintiff will be able to prove that C.O. Moss conducted repeated strip searches without a legitimate penological purpose remains to be seen. The Court expresses no view whether searches using a body scanner, even if conducted without a legitimate purpose and only to annoy, would violate 42 U.S.C § 1983.

## VI.   John Doe Defendants

After nine months of discovery and diligent efforts by Defendants to assist him, Tartt has still been unable to identify the officers who allegedly maced and choked him. "'It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Farid v. Ellen*, 593 F.3d 233, 249 (2d Cir.

2010) (quoting *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006)).  Tartt is advised that if he is unable to identify his assailants within a reasonable time, his claims for excessive force will be dismissed.  *See Valentin*, 121 F.3d at 75.

## CONCLUSION

For the above stated reasons, Defendants' motion for summary judgment is GRANTED IN  PART and DENIED  IN  PART.  Tartt's claims against Hill, Lett and Payne are dismissed with prejudice for failure to exhaust administrative remedies.  The Clerk of the Court is respectfully directed to terminate Dkt. 34 and terminate the case as against Defendants Hill, Lett and Payne.

**SO ORDERED.**

**Dated: July 16, 2014**
          **New York, NY**

**VALERIE CAPRONI**
**United States District Judge**